UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
*********************************
                                 *
ALLIANCE GROUP SERVICES, INC.,   *   Case No. 3:02CV02080(WWE)
                                 *
                                 *
                   Plaintiff     *
          v.                     *
                                 *
                                 *   March 26, 2004
GRASSI & CO., CERTIFIED PUBLIC   *
ACCOUNTANTS, P.C.                *
                                 *
                   Defendant.    *
                                 *
                                 *
*********************************
```

## LOCAL RULE 56(A)2 STATEMENT OF ALLIANCE GROUP SERVICES, INC. ("AGSI")

Plaintiff AGSi submits this statement pursuant to Local Rule 56(A)2, as material issues of facts remain. In response to Defendant Grassi & Co.'s ("Grassi") 56(A)1 statement, although AGSi responds more fully in AGSi's Brief in Opposition to Defendant's Motion for Summary Judgment, which is hereby incorporated by reference, AGSi states as follows:

1. Plaintiff admits that it provides network services to its customers as well as many other services. Plaintiff further admits that it provides access to AT&T's network for its clients as well as to other telecommunication carrier networks. All matters not specifically admitted are denied. (Deposition of DiPasquale ("DiPasquale") at 5; A copy of the deposition transcript of Mr. DiPasquale is attached to John Swansinger's Declaration as

1

Exhibit F, both of which are incorporated as part of AGSi's Brief in Opposition to Summary Judgment).

2. Admit.

3. AGSi admits that at some point in 1997-1999 it hired Tabb to perform certain accounting services and further states that Tabb was hired in 2000 to perform accounting services which they performed through 2001. All matters not specifically admitted are denied. (Deposition of Carol Shannahan ("Shannahan") at 42. A copy of the deposition transcript of Ms. Shannahan is attached to John Swansinger's Declaration as Exhibit D, both of which are incorporated as part of AGSi's Brief in Opposition to Summary Judgment).

4. AGSi admits that Tabb was hired to audit AGSi's June 30, 2000 financial statements, but further states that Tabb merged with Grassi (and the former Tabb employees became Grassi employees) and Grassi therefore completed the June 30, 2000 audit of AGSi's financial statements. All matters not specifically admitted are denied. Deposition of Hongling Zhang a.k.a. "Linda" ("Linda") at 24. A copy of the deposition transcript of Linda is attached to John Swansinger's Declaration as Exhibit I, both of which are incorporated as part of AGSi's Brief in Opposition to Summary Judgment).

5. AGSi admits that it entered into a contract with Global Crossing and that it uses Global Crossing or other telecommunication providers when the services not readily covered by AT&T. AGSi further states that it also uses Global Crossing when a customer requests

such service and/or when the rates justify such usage. All matters not specifically admitted are denied. DiPasquale at 24-25; Deposition of Stuart Holden ("Holden") at 20. A copy of the deposition transcript of Mr. Holden is attached to John Swansinger's Declaration as Exhibit N, both of which are incorporated as part of AGSi's Brief in Opposition to Summary Judgment).

6. AGSi admits that the contact between it and Global Crossing allows for Global Crossing to charge minimum usage fees but denies that in the usual course of dealings between these two parties that such fees were ever charged prior to the relationship souring due to the deposit dispute. All matters not specifically admitted are denied. DiPasquale at 75-76. Deposition of Michael Mallon ("Mallon") at 97-98. A copy of the deposition transcript of Mr. Mallon is attached to John Swansinger's Declaration as Exhibit J, both of which are incorporated as part of AGSi's Brief in Opposition to Summary Judgment).

7. Admit.

8. AGSi admits that the $250,000.00 deposit was applied in error by Global Crossing and without the consent of AGSi. All matters not specifically admitted are denied. (DiPasquale at 59 and 72).

9. AGSi admits that the $250,000.00 was applied in error by Global Crossing and without the consent of AGSi. All matters not specifically admitted are denied. (DiPasquale at 59 and 72).

10. AGSi admits that the invoice would have reveled the application of the deposit and that such invoice was not entered into AGSi's accounting system.  However, AGSi denies that it was aware that the deposit was missing and further states that it relied upon the verification of said deposit that was allegedly performed by Grassi.  All matters not specifically admitted are denied.  (DiPasquale at 59 and 61-62; Deposition of Steven Graham ("Graham") at 24-27.  A copy of the deposition transcript of Mr. Graham is attached to John Swansinger's Declaration as Exhibit L, both of which are incorporated as part of AGSi's Brief in Opposition to Summary Judgment).

11. AGSi admits that it relied upon the audit conducted by Grassi as to the existence of the deposit and did not know that the deposit had been depleted until June 2002 when it sought to apply the deposit to settle a dispute with Global Crossing.  All matters not specifically admitted are denied.  (DiPasquale at 59 and 61-62; Graham at 24-27).

12. Admit.

13. Denied.  AGSi billed its customers ahead of the monthly invoice based upon the daily bills received electronically from Global Crossing.  Therefore a June invoice was a June revenue/expense.  (Mallon at 21-23; Shannahan at 30).

14. Denied. AGSi billed its customers ahead of the monthly invoice based upon the daily bills received electronically from Global Crossing. Therefore a June invoice was a June revenue/expense. (Mallon 21-23; Shannahan 30).

15. Admit.

16. Denied. AGSi states it did not place several of its new clients with Global Crossing due to the high rates Global Crossing was charging as it refused to reduce rates (as was the trend in the industry) due to the deposit dispute. Alliance did not transfer business away from Global Crossing. (Holden at 20, 24-26 and 37; Graham at 42-44 and 54-55).

17. AGSi admits that a consultant it hired determined there were overbilling issues with Global Crossing as well as other venders and that these disputes have been previously resolved. One dispute (other than the deposit issue) remains with Global Crossing as AGSi believes it is being charged for another company's traffic. This issue is currently being investigated by Global Crossing and is expected to resolve quickly. AGSi further states that this dispute had nothing to do with the allegations and damages sustained by AGSi in this matter. All matters not specifically admitted are denied. (Graham at 35-36; DiPasquale at 75-77).

18. AGSi admits that this dispute occurred but states that it has been previously settled and had no effect on the allegations and damages sustained by AGSi in this matter. All matters not specifically admitted are denied. (Graham at 35 and 54-55).

19. AGSi admits that it agreed to pay $480,000 to resolve the Lextel Dispute in return for a credit on the Lextel charges from Global Crossing. AGSi further states that in attempting to resolve this dispute, AGSi requested that the $250,000 deposit be applied as part of the settlement. It was not until payment was attempted to be made in this settlement that the deposit was found to be depleted by both AGSi and Global Crossing. Therefore, the Lextel dispute is not related to the allegations and damages sustained by AGSi in this matter. All matters not specifically admitted are denied. (Graham at 34-37; DiPasquale at 44-46 and 55-59).

20. AGSi admits that it was told by Global Crossing on or about June 5, 2002 that Global Crossing had applied the deposit in error on May 4, 2000 and did not record such application until the June 2000 invoice. AGSi further admits that it received a facsimile on or about June 5, 2000 which reflects this information. All matters not specifically admitted are denied. (DiPasquale at 59).

21. AGSi has not asked Global to return the money because Global Crossing is currently in bankruptcy proceedings. Therefore, AGSi has requested that Global remove the delinquent payer status received as a result of this deposit dispute, remove the new monthly minimum fee being charged due to this dispute, apply the other deposit in the amount of $30,000.00 which remains at Global Crossing and provide the rate reduction which was available to Global Crossing's other customers. However, none of these actions have been accepted by Global Crossing and AGSi continues to be damaged due to

6

this deposit dispute. All matters not specifically admitted are denied. (DiPasquale at 75-77; Graham at 42-44 and 54-55).

22. AGSi admits it is withholding $100,000 from its invoice in part because of the deposit dispute. AGSi is also withholding what are believed to be overpayments for traffic which belongs to another company and which was incorrectly billed to AGSi. This traffic issue is currently being investigated by Global Crossing. All matters not specifically admitted are denied. (DiPasquale at 85-88; Graham at 36).

23. AGSi admits that there is a provision in the contract with Global Crossing that would allow Global Crossing to apply a minimum usage fee but states that such a fee was never applied until after the deposit dispute arose and the parties' relationship deteriorated. All matters not specifically admitted are denied. (Mallon at 97-98; Graham at 45).

24. AGSi denies that it reduced its usage of Global Crossing due to financial problems and bankruptcy and/or that it moved traffic away from Global Crossing's account (unless a client specifically asked to be moved). AGSi admits that it did not send as much new traffic to Global Crossing as other carriers were more cost effective due to Global Crossing's refusal to reduce their high rates because of the deposit issue. All matters not specifically admitted are denied. (Holden at 24 and 56).

25. AGSi admits that the minimum monthly fee was first imposed on the April 2003 invoice and was charged in varying amounts on subsequent invoices. AGSi also admits that the

shortfall charges currently total $955,004, but that additional charges may accrue as a settlement has not been reached on this matter with Global Crossing. All matters not specifically admitted are denied. (Graham at 34 and 44-46).

26. AGSI admits that it has had other disputes with Global Crossing over billing issues, as has been common throughout the parties' relationship' but denies that any other billing issue lead to the deterioration of the parties' relationship and further states that the minimum usage charge was directly related to the deposit dispute. All matters not specifically admitted are denied. (DiPasquale at 75-77; Graham at 36, 44 and 54-55).

27. Global Crossing has withheld applying monthly minimum charges since August 2003 until the deposit issues is resolved due to AGSi's protests. Global Crossing has not issued any credits for these charges prior to August 2003 and still maintains the right to assess additional minimum monthly usage charges from August 2003 forward, based upon the final resolution of these issues. All matters not specifically admitted are denied. (Graham at 34, 44-46).

28. AGSi is withholding payment of the minimum usages charges as disputed amounts under the contract. Furthermore, Global Crossing has not issued any credits for these charges and still maintains the right to assess additional minimum monthly usage charges from August 2003. All matters not specifically admitted are denied. (Graham at 34 and 45-47).

29. AGSi admits it has the capacity to transfer traffic to Global Crossing's network but denies that it has the legal means to make such a switch of its customers and further denies that it has moved any customers away from Global Crossing's network except for those who have requested such a move. All matters not specifically admitted are denied. (Holden at 24).

30. AGSi admits that there are charges in excess of usage that have been withheld relating to disputed amounts, as AGSi is permitted to do under AGSi's and Global Crossing's contract. AGSi further states that it is current in its payment of its monthly usage with Global Crossing. The agreement further provides that these disputed amounts are not considered late when withheld pending resolution and therefore are irrelevant to the damages sustained by AGSi. All matters not specifically admitted are denied. (Graham at 34, 44 and 55-56. See also; Global Crossing Contract as attached to Defendant's Motion for Summary Judgment as Exhibit J).

31. AGSi cannot admit or deny this statement as it involves the internal processes of Global Crossing to which AGSi is not privy. AGSi admits that this statement is the OPINION of Mr. Graham, who also admitted that he did not perform such applications and further directed such questions to the billing department of Global Crossing. All matters not specifically admitted are denied. (Graham 12-14, 45-47).

32. Again, AGSi cannot admit or deny this statement as it involves the internal processes of Global Crossing to which AGSi is not privy. AGSi admits that this statement is the

OPINION of Mr. Graham, who also admitted that he was not aware of a provision relating to minimum usages in AGSi's contract with Global Crossing and further admitted that did not perform such applications and directed such questions to the billing department of Global Crossing   All matters not specifically admitted are denied. (Graham at 12-13, 45-47).

AGSi further states that numerous genuine issues of material fact remain which are more adequately discussed in AGSi's Brief in Opposition to Defendant's Motion for Summary Judgment, which is hereby fully incorporated herein by reference.  Such remaining issues of material fact include, but are not limited to:

1. Whether or not the June 2000 invoice (which reflected the application of the deposit) should have been examined as a June expense. (Gero at 1-4; Gero Reply 1-4; Mallon at 21-23; Shannahan at 30 v. McGann at 72-75.  Copies of Mr. Gerro's expert report, and Mr. Gerro's reply is attached to John Swansinger's Declaration as Exhibits A and C, which are incorporated as part of AGSi's Brief in Opposition to Summary Judgment);

2. Whether Grassi properly performed the alternative procedures required under GAAS/GAAP to independently verify the amount and existence of the deposit with Global Crossing. (Linda at 43; Gero at 1-4; v. McGann at 62-64; Kappel at 13-14.  A copy of the expert report of Mr. Kappel is attached to John Swansinger's Declaration as

Exhibit B, both of which are incorporated as part of AGSi's Brief in Opposition to Summary Judgment);

3. Whether Grassi properly followed GAAS/GAAP and/or their own internal procedures to train/supervise their staff and to perform/review their work on at AGSi, including, but not limited to:

   a. When it failed to obtain a client engagement letter/management representation letter. (DiPasquale at 98; Manhaupt at 68 v. McGann at 50; Manhaupt at 67, Kappel at 11-12. Copies of the deposition transcripts of Mr. Manhaupt and Mr. McGann are attached to John Swansinger's Declaration as Exhibits G and E, respectively, and which are incorporated as part of AGSi's Brief in Opposition to Summary Judgment);

   b. When it issued a low-risk assessment even though there was turnover at AGSi in the accounting department, including the Comptroller position. (Gero at 2 v. Kappel at 10-11, 12-13, and 14-16);

   c. When it failed to document any reconciliation of the low risk assessment provided on the Inherent and Combined Risk Assessment Form with the maximum risk assessed in the planning stages of the audit. (Gero at 2 v. Kappel at 10-11, 12-13, and 14-16. <u>See also</u>; Exhibits O, P and Q, attached to John Swansinger's

Declaration and which are incorporated as part of AGSi's Brief in Opposition to Summary Judgment);

d. When it failed to complete the General Planning Procedures form. (Manhaupt at 60-64 v. McGann at 45; Kappel at 12-13. <u>See also</u>; Exhibit R attached to John Swansinger's Declaration, which are incorporated as part of AGSi's Brief in Opposition to Summary Judgment);

e. When it failed to complete the Supervision, Review and Approval form. (Manhaupt at 60-64 v. McGann at 67-68, Kappel at 12-13. <u>See also</u>; Exhibit S attached to John Swansinger's Declaration, which are incorporated as part of AGSi's Brief in Opposition to Summary Judgment);

f. When it failed to perform procedures in regards to cash accounts which were within the scope of the audit, and failed to perform any follow up or alternative procedures. (Gero at 1-4 v. McGann at 62-64, Kappel at 13-14);

g. When it failed to perform alternative procedures when an independent confirmation was not returned regarding the deposit with Global Crossing. (Linda at 43; Gero at 1-4 v. McGann at 62-64; Kappel at 13-14);

h. When it failed to engaged in the analytical review required to be performed at the beginning stages of an audit. (Gero at 1; Manhaupt at 60-64; Colbert at 29-32 v.

>McGann at 45. A copy of the deposition transcript of Mr. Colbert is attached to John Swansinger's Declaration as Exhibit H, which is incorporated as part of AGSi's Brief in Opposition to Summary Judgment);
>
>i. When it failed to evaluate differences noted in the accounts receivable confirmation process and failed to make any conclusions as to the effect of those differences. (Linda at 43; Gero at 1-4 v. McGann at 62-64); and
>
>j. When it failed to reconcile material differences on the balance sheet of the tax return and that contained in the audited financial statements. (Gero at 2; Colbert at 42 v. Kappel at 7-9).

4. Whether or not the misstatements on the financial statements are material. (Gero at 1-4, Gero Reply at 1-4 v. Kappel at 7-9);

5. Whether AGSi was improperly charged for work that was not performed, performed in duplicate or performed so inadequately as to not be in accordance with the terms as agreed by the parties, including but not limited to:

>a. Work, such as the materiality analysis, which was performed and invoiced to AGSi twice. (Shannahan at 42 v. Kappel at 1-20. See also; Exhibits T and O attached to John Swansinger's Declaration, which are incorporated as part of AGSi's Brief in Opposition to Summary Judgment);

13

    b. Charges for a several month audit when such an uncomplicated audit of a small company should have only taken a few days to a few weeks. Linda at 59; Shannahan at 42-43; DiPasquale at 71 and 91 v. McGann at 36 and 43);

    c. Charges for work which did not follow GAAAP/GAAS. (Gero at 1-4, Gero Reply at 1-4 v. Kappel at 1-20);

    d. Charges for work which was materially false and is required to be restated. (Gero at 1-4, Gero Reply at 1-4; Colbert at 42 v. Kappel at 6-9); and

    e. Charges for work sloppy and irreconcilable work, such as the balance sheet on the tax return and the audited financial statements for June 30, 2000. (Colbert at 37 and 42 v. Kappel 1-20).

6. Whether or not Grassi's collective negligence resulted in a breach of the contract. (Gero at 1-4, Gero Reply at 1-4 v. Kappel at 1-20. <u>See also</u>; all evidence cited in AGSi's Brief in Opposition to Defendant's Motion for Summary Judgment);

7. Whether or not Grassi failed to provide a timely audit. (Shannahan at 42-43; DiPasquale at 71 and 91; Linda at 59 v. McGann at 36 and 43);

8. Whether or not Grassi's tax returns are misstated and need to be corrected. (Colbert at 37 and 42 v. Kappel at 6-9 and 19);

9. Whether Grassi had a duty to correct AGSi's June 30, 2000 audited financial statements and/or June 30, 2000 tax return when it knew or should have known that these documents had been misstated. (Colbert at 37 and 42; v. Kappel at 1-20);

10. Whether Grassi was aware of the sale of AGSi. (McGann at 76-68; Mallon at 25-26; Conigliaro at 33-34 v. McGann at 39. A copy of the deposition transcript of Mr. Conigliaro is attached to John Swansinger's Declaration as Exhibit K, which is incorporated as part of AGSi's Brief in Opposition to Summary Judgment); and

11. Whether Grassi sought to profit from such sale by knowingly or recklessly inflating AGSi's audited financial statements. (McGann at 76-68; Mallon at 25-26; Conigliaro at 33-34 v. McGann at 39).

        **Respectfully submitted,**

        **MINTZ, LEVIN, COHN, GLOVSKY AND POPEO, P.C.**


By: /s/ Pamela Chambers
   **Pamela Chambers, Esq. (21105)**
   Mintz, Levin, Cohn, Ferris,
   Glovsky and Popeo, P.C.
   Connecticut Financial Center
   157 Church Street
   New Haven, Connecticut 06510
   (203) 777-8200 phone
   (203) 777-7111 fax


**Of Counsel:**

**RITZLER, COUGHLIN
 & SWANSINGER, LTD.**

John Swansinger, Esq.
Drue Marie Skaryd, Esq.
1001 lakeside Avenue
1550 North Point Tower
Cleveland, Ohio 44114
(216) 241-8333 phone
(216) 241-5890 fax

**PROOF OF SERVICE**

A copy of the foregoing Local Rule 56(a)2 Statement has been forwarded to the following by electronic mail and regular U.S. Mail on this 26th day of March 2004:

Robert K. Ciulla, Esq. (Ct 04262)
Ciulla & Donofrio, LLP
127 Washington Ave.
P.O. Box 219
North Haven, CT 06473
(203) 234-0379

and

John Eickmeyer, Esq. (Ct 24317)
Vedder Price Kaufman & Kammholz
805 Third Ave.
New York, New York 10022
(212) 407-7799

**MINTZ, LEVIN, COHN, GLOVSKY AND POPEO, P.C.**

By: /s/ Pamela Chambers
    **Pamela Chambers, Esq. (21105)**