UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

-------------------------------------------------------------

ALLIANCE GROUP SERVICES, INC.

                    Plaintiff,

          -against-

GRASSI & CO., CERTIFIED PUBLIC
ACCOUNTANTS, P.C.,

                  Defendant.

-------------------------------------------------------------

Civil Action No. 3:02CV02080 (WWE)

## REPLY DECLARATION OF JOHN H. EICKEMEYER IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JOHN H. EICKEMEYER, an attorney admitted pro hac vice in this matter, hereby declares under penalty of perjury, pursuant to 28 U.S.C. §1746:

1.     I am admitted pro hac vice in this matter and am a shareholder of Vedder, Price, Kaufman & Kammholz, P.C., attorneys for defendant Grassi & Co., Certified Public Accountants, P.C. ("Grassi"). I submit this Reply Declaration in further support of Grassi's motion for summary judgment dismissing the Complaint of plaintiff Alliance Group Services, Inc. ("Alliance") with prejudice. I am fully familiar with the facts and circumstances set forth herein.

2.     Grassi responds to Alliance's opposition papers in its accompanying Reply Memorandum and its points will not be repeated at length here. The purpose of this Reply Declaration is to place before the Court certain additional documents and excerpts from deposition testimony taken in this action that are referred to in the Reply Memorandum and that support Grassi's entitlement to summary judgment.

3.      Annexed hereto as Exhibit A are pages 36 and 58 of the transcript of the deposition testimony of Steven Graham, taken on December 18, 2003, which are referred to at page 5 of Grassi's Reply Memorandum.

4.      Annexed hereto as Exhibit B are four pages from Grassi's workpapers for its audit of Alliance's June 30, 2000 financial statements, headed "Search Test for Unrecorded Liabilities-06/30/00," which are referred to at page 6 of Grassi's Reply Memorandum.

5.      Annexed hereto as Exhibit C are the pages 21-23 of the transcript of the deposition testimony of Michael Mallon, taken on November 5, 2003, which are referred to at page 7 of Grassi's Reply Memorandum.

6.      Annexed hereto as Exhibit D are the pages 38-39 transcript of the deposition testimony of Carolyn Shannahan, taken on December 10, 2003, which are referred to at page 7 of Grassi's Reply Memorandum.

I declare on this 7th day of April, 2004, under penalty of perjury that the foregoing is true and correct.

John H. Eickemeyer, Esq.

# EXHIBIT A

1                                                                                    1

2                    UNITED STATES DISTRICT COURT

3                  FOR THE DISTRICT OF CONNECTICUT

4    _____

5    ALLIANCE GROUP SERVICES, INC.,

6                                        Plaintiff,

7

8        -against-                          Civil Action No.

9                                          302CV02080 (WWE)

10

11   GRASSI & CO., CERTIFIED PUBLIC ACCOUNTANTS, P.C.,

12                                        Defendant.

13   _____

14

15       EXAMINATION BEFORE TRIAL held at the Offices of EXECUTIVE

16   REPORTING SERVICE, 28 East Main Street, Suite 101, Rochester,

17   New York 14614 on December 18, 2003, commencing at 2:10 PM.

18

19                  EXAMINATION OF:  STEVEN GRAHAM

20

21

22                  REPORTED BY:     MICHELE COUTS

23

24

25

STEVEN GRAHAM - BY MR. EICKEMEYER                    36

1

2     Alliance Group.  It is our intentions to do that, we

3     have not done it yet.

4  Q.  Any particular reason why it hasn't been done yet?

5  A.  Just the slow credit process at Global Crossing at

6     getting approvals and paperwork done.

7  Q.  Are there currently any other items in dispute between

8     Global Crossing and Alliance?

9  A.  I would say with any of your carrier customers there

10     is always ongoing dispute rate issues or whatever.

11     The only one of major value is the 100,000 dollar

12     dispute that they have with us that does not have a

13     resolution yet.

14  Q.  What is the nature of that dispute?

15  A.  On one of their invoices, I'm not sure which one, they

16     had a 100,000 dollar spike in usage that Alliance did

17     not believe was their usage.  They have disputed it,

18     but our support team has not done the research on it

19     yet to determine if it was their traffic or not their

20     traffic.

21  Q.  Do you know if there is still any dispute between

22     Global Crossing and Alliance with respect to the

23     deposit, the 250,000 dollar deposit?

24  A.  I know our collection department could give you the

25     actual numbers.  The agreement I believe that was



1                    STEVEN GRAHAM - BY MR. EICKEMEYER                    58

2    Q.    Okay.  And if that were paid tomorrow by Alliance,

3          would they be considered to be current?

4    A.    It is a tough question because there are -- they would

5          be considered current in the fact that Global Crossing

6          would not send a default notice out to Alliance, but

7          there would still be dollar amounts that would still

8          appear out there in shortfalls and outstanding

9          disputes that will fall outside of the current bucket

10         and those are a discussion that we have ongoing with

11         Alliance to try and clear up the whole thing.

12   Q.    Do you know what the current amount of those

13         shortfalls and other disputes is?

14   A.    I don't know the dollar amounts, but I know the

15         collection people could get those numbers to you.

16   Q.    Are those also a factor in determining whether a

17         ratage estimate could be made for Alliance?

18   A.    I would say they are more of a factor in renegotiating

19         the monthly minimum than it is to the rate reduction.

20   Q.    Okay.  You say they are factors in renegotiating the

21         monthly minimum, what do you mean by that?  I'm not

22         quite sure I followed that.

23   A.    Sure.  If for example, Alliance's current monthly

24         minimum right now is 350,000, we can use the shortfall

25         balance in renegotiating the new minimum and crediting

```
1          STEVEN GRAHAM - BY MR. EICKEMEYER              59
2     that shortfall balance and potentially lowering their
3     commitment level to Global Crossing to where they are
4     meeting it while extending the term.
5                    MR. EICKEMEYER:  I don't think I have
6          any other questions.  Thanks.
7                    MR. SWANSINGER:  None for me either.
8     (WHEREUPON THE EXAMINATION BEFORE TRIAL WAS ADJOURNED
9     AT 4:08 PM).
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

# EXHIBIT B

| | | | Prepared By | Initials | Date |
|---|---|---|---|---|---|
| | | | Approved By | | |

**Alliance Group**

**Search Test for Unrecorded Liabilities**

06/30/00

SCOPE: All items >$5,000 for July, $7,000 for Aug. $10,000 for Sep. $15,000 for Oct. $20,000 for Nov.

SOURCE: Check Register    Bill Pay

| Ck # | Vendor | Amount | Inv. Date | Is item applicable to 06/30/00 | Has item been previously recorded? |
|---|---|---|---|---|---|
| 2581 | 1221 Post Road Eastern | 18,750 | 07/01/00 | N | Y |
| 2651 | American Express | 13,768.92 | 06/13/00 | Y | Y |
| 2671 | Global Crossing | 260,490.99 | 05/18/00 | Y | |
| dm | Company Payroll | 95,953.78 | 7/14/00 | N | |
| | | 51,177.42 | 5/18/00 | N | Y |
| 2623 | US West Community | 60.00 | 5/2/00 | Y | |
| 2613 | Bell Atlantic | 5,385.61 | | | |
| 2612 | | 40.00 | | | |
| 2611 | | 92,354.37 | 7/2/00 | Y | |
| dm | Company Payroll | 8,167.90 | 07/01/00 | N | |
| 2646 | Guardian PHS | 48,33.22 | 06/01/00 | | |
| 3645 | | 81,875 | 07/13/00 | N | |
| 2752 | Third Continuation | 26,875 | | N | |
| 2753 | WS Investments | 4,957.38 | | N | |
| 2754 | Third Continuation | 25,677.87 | 07/31/00 | N | |
| 6755 | CB Communication | 469,067 | 07/31/00 | N | |
| 5756 | Concept One | 6,455.08 | 07/31/00 | N | |
| 5733 | DHS Group | 103,326.73 | 7/30/00 | N | |
| dm | Company Payroll | 6,666.74 | 8/15/00 | N | |
| 5781 | 8/15/2000 | | | | |
| 3767 | AT&T - USRC | 300,000 | | N | Y |
| 3768 | AT&T - Equalnet | 100,000 | | N | |
| 2053 | Easton - Telecom | 25,000 | | N | Y |
| 2059 | Accu Staff Tricomp | 1,000.88 | 06/30/00 | N | |
| 2054 | Global Crossing | 334,250.06 | 07/14/00 | N | |
| 2056 | AT&T - USRC | 200,000 | | N | Y |
| | AT&T - USRC | 1,500,000 | | Y | |
| | Ameritech | 32,904.86 | Various | N | |
| wire | Third Continuation | 8,806.11 | 8/24/00 | N | |
| wire | WS Investments | 29,666.11 | 8/24/00 | N | |
| 5841 | CB Communications | 3,673.99 | 8/31/00 | N | |
| 5842 | Concept One Conn | 968,363 | 8/11/00 | N | |
| 5848 | Jim McQuillan | 8,1700 | 8/31/00 | N | |
| 5857 | 1221 Post Road | 18,200.00 | 8/31/00 | N | |
| 2005 | | | | | |
| am | Company Payroll | 21,431,540 | 8/15/00 | N | Y |
| 2810 | AT&T A.S. Net Wealth | 250,000.00 | | N | |
| dm | Company Payroll | 1,005,109.72 | 8/15/00 | N | |
| dm | Company Payroll | 989,999.50 | 8/15/00 | N | |
| 3876 | American Express | 15,708.05 | 8/31/00 | N | |
| 5821 | Accu Staff Incorporated | 11,210.11 | 8/25/00 | N | |
| 5888 | Milbank Hudson & Quest LLP | 3,253.90 | 10/6/00 | N | |
| dm | Company Payroll | 11,220,440 | 9/30/00 | N | Y |
| 3811 | AT&T A.S. Net Wealth | 1,000,000.00 | | N | |

G 0399

| | w/p | potential adjustment | Comments | | | | |
|---|---|---|---|---|---|---|---|
| 1 | | | July Rent | | | | |
| 2 | CC | | | | | | |
| 3 | CC | | | | | | |
| 4 | | | July payroll | | | | |
| 5 | CC | | | | | | |
| 6 | CC | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | CC | | | | | | |
| 12 | | | Monthly payment for notes | | | | |
| 13 | | | | | | | |
| 14 | | | | | | | |
| 15 | | | Broker Fees for July | | | | |
| 16 | | | | | | | |
| 17 | | | | | | | |
| 18 | | | | | | | |
| 19 | | 6666 34 | | | | | |
| 20 | CC | | | | | | |
| 21 | CC | | | | | | |
| 22 | | | | | | | |
| 23 | CC | | | | | | |
| 24 | | | | | | | |
| 25 | CC | | | | | | |
| 26 | CC | | | | | | |
| 27 | CC | | | | | | |
| 28 | | | Monthly payment for notes | | | | |
| 29 | | | | | | | |
| 30 | | | Broker Fees for Aug | | | | |
| 31 | | | | | | | |
| 32 | | | Commissions | | | | |
| 33 | | | Aug Rent | | | | |
| 34 | | | | | | | |
| 35 | | | | | | | |
| 36 | CC | | | | | | |
| 37 | | | | | | | |
| 38 | | | | | | | |
| 39 | | | | | | | |
| 40 | | | | | | | |
| 41 | CC | | | | | | |
| 42 | | | | | | | |
| 43 | CC | | | | | | |

G 0400

| | Prepared By | Initials | Date |
|---|---|---|---|
| | | RMB | 7/6 |
| | Approved By | | |

**Alliance Group**

**Search Test for Unrecorded Liabilities**

06/30/00

Scope: All items > $5000 for July, $7,000 for Aug, $10,000 for Sep, $15,000 for Oct, $20,000 for Nov.

Source: Check register — Bill PMT

| | ck# | Vendor | Amount | Inv Date | Is item applicable to 6/30/00 | Has item been previously Recorded | w/p |
|---|---|---|---|---|---|---|---|
| 1 | wire | Third Continuations | 86,000.28 | 7/24/00 | N | - | |
| 2 | wire | WS Investments | 38,805.28 | 8/4/00 | N | - | |
| 3 | 2877 | American Express | 14,430.14 | 9/6/00 | N | - | |
| 4 | 5949 | CB Communications | 39,163.14 | 9/27/00 | N | - | |
| 5 | 5750 | Concept One Comm | 10,094.32 | 9/27/00 | N | - | |
| 6 | 5749 | Global Crossing | 27,222.17 | 8/28/00 | N | - | |
| 7 | 5970 | Early, Lennon, Peters. | 12,150.00 | 9/22/00 | N | - | |
| 8 | DM | Company payroll | 10,43/230 | 9/24/00 | N | - | |
| 9 | 575 | 1221 Post Road | 18,260.00 | 9/11/00 | N | - | |
| 10 | 5976 | Bell Atlantic | 19,160.39 | | N | - | |
| 11 | 5785 | Talb, Conigliaro & McGann | 20,000.00 | 5/3/00 | Y | Y | CC |
| 12 | 6055 | 1221 Post Road | 18,260.00 | 10/8/00 | N | - | |
| 13 | wire | Third Continuations | 85,238.70 | 10/22/00 | N | - | |
| 14 | wire | WS Investments | 38,587.95 | 10/22/00 | N | - | |
| 15 | 6678 | AT&T | 50,000.00 | | N | - | |
| 16 | 6684 | Prime Axxess-SNGT | 21,005.20 | | N | - | |
| 17 | 6621 | CB Communications | 240,716.00 | 10/27/00 | N | - | |
| 18 | 618 | WSH broker service | 16,967.11 | 9/30/00 | N | - | |
| 19 | 627 | US west Communication | 243,600.04 | 9/15-11/5/00 | N | - | |
| 20 | 6288 | Talb, Conigliaro & McGann | 24,460.00 | 3/3/00 | Y | N | |
| 21 | | | | | | | |
| 22 | | | | | | | |
| 23 | | | | | | | |
| 24 | | | | | | | |
| 25 | | | | | | | |
| 26 | | | | | | | |
| 27 | 2005 | Network Cost - 800 origination cost | | 666,634 | | | |
| 28 | 0702 | Accrued liabilities | | | | 666,634 | JE WF 7/7 |
| 29 | | | | | | | |
| 30 | 4205 | Professional fees - Accounting | | 38,398.— | | | |
| 31 | 0702 | Accrued liabilities | | | | 38,398.— | JE WF 7/7 |
| 32 | | | | | | | |
| 33 | | | | | | | |
| 34 | | | | | | | |
| 35 | | | | | | | |
| 36 | | | | | | | |
| 37 | | | | | | | |
| 38 | | | | | | | |
| 39 | | | | | | | |
| 40 | | | | | | | |
| 41 | | | | | | | |
| 42 | | | | | | | |
| 43 | | | | | | | |

G 0402



| (6) | (7) | (8) | (9) | (10) | (11) | (12) | (13) |
|---|---|---|---|---|---|---|---|
| Potential adjustment | | Comments | | | | | |

monthly payment for Notes

Broker fee for SEP

Monthly payment for Notes

Broker fee for SEP
Broker fee

383,378 –

G 0403

# EXHIBIT C

# ORIGINAL

1

1

2  UNITED STATES DISTRICT COURT

3  DISTRICT OF CONNECTICUT

4  -------------------------------------------x

5  ALLIANCE GROUP SERVICES, INC.,

6                          Plaintiff,

7          -against-

8  GRASSI & CO., CERTIFIED PUBLIC ACCOUNTANTS,

9  P.C.,

10                          Defendant.

11  -------------------------------------------x

12                  805 Third Avenue

13                  New York, New York

14

15                  November 5, 2003

16                  11:25 a.m.

17

18          Deposition of MICHAEL W. MALLON,

19  pursuant to Agreement, before Mindy

20  Levy, a Notary Public of the State of

21  New York.

22

23      ELLEN GRAUER COURT REPORTING, CO.
        133 East 58th Street, Suite 1201
24              New York, New York
                212-750-6434
25              Ref: 71936

21

1                              Mallon

2          A.    Yes.

3          Q.    Do you recognize these as invoices

4    that were rendered to Alliance by Global

5    Crossing?

6          A.    Yes.

7          Q.    The first one has a cycle date

8    ending May 18, 2000, and the invoice date is

9    May 26, 2000, and just for the record, this

10   page bears a Bates number of Plaintiff's 121,

11   means it was produced by your counsel to us.

12              That indicates that the services

13   that are reflected on this invoice from Global

14   to Alliance would be those that were provided

15   up through May 18, 2000, correct?

16         A.    Correct.

17         Q.    And then at some subsequent time,

18   you would be billing your clients for the time

19   that was reflected in this invoice that's

20   dated May 26 2000, correct?

21         A.    Correct.

22         Q.    When would your customers,

23   Alliance's customers, be billed for this time?

24         A.    Okay, the May 18th cycle, we would

25   have billed our customers from May 1st through

22

1                        Mallon
2    May 31 for the daily CDR traffic coming in
3    electronically; so there would be an offset,
4    we would be ahead of the actual invoice.
5           Q.    You would be ahead of the actual
6    invoice?
7           A.    Correct.
8           Q.    Let me see if I understand this
9    correctly.  You're going to bill your
10   customers for May 1 through May 31?
11          A.    Sure.
12          Q.    You're going to bill your clients
13   for their usage from May 1 through 31; when
14   would that bill be sent?
15          A.    6/5.
16          Q.    June 5th.
17                Would some of the time reflected
18   in that bill be time that was billed for in
19   the May 26 invoice?
20          A.    That bill to the customer, you
21   mean?
22          Q.    Right, the June 5 bill to the
23   customer, some of that would consist of time
24   for which you were being billed on this May 26
25   invoice?

23

1                        Mallon

2        A.     May 1 through 18th.

3        Q.     Some of it would encompass time

4    for which Alliance would be billed on a

5    subsequent invoice from Global Crossing?

6        A.     Right.

7        Q.     In Alliance's records, for which

8    month would the cost that is reflected in the

9    invoice to Alliance from Global Crossing, for

10   which month would that be booked?

11       A.     May.

12       Q.     That would be billed as May

13   expense?

14       A.     Yes, yes.

15            MR. SWANSINGER:  If you're

16        referencing Exhibit 5, Plaintiff's 121,

17        not the remainder of the exhibit?

18            MR. EICKEMEYER:  Exactly.

19            MR. SWANSINGER:  Focusing on May

20        and June.

21       A.     Your the question was only towards

22   the current activity.

23       Q.     Right.

24            Would the May 1 to May 31 revenue

25   from the customer also be recorded as May

# EXHIBIT D

1

1        IN THE UNITED STATES DISTRICT COURT

2            DISTRICT OF CONNECTICUT

3   ALLIANCE GROUP SERVICES        SUMMONS IN CIVIL CASE NO.
                Plaintiff         302CV02080(WWF)
4           VS.
    GRASSI & COMPANY, CERTIFIED
5   PUBLIC ACCOUNTANTS, P.C.,
                Defendant.         DECEMBER 10, 2003
6

7        DEPOSITION OF CAROLYN SHANNAHAN        COPY

8

9   APPEARANCES:
        FOR THE PLAINTIFF:
10          RITZLER, COUGHLIN & SWANSINGER, LTD
                1001 Lakeside Avenue
11              1550 North Tower
                Cleveland, Ohio 44114
12          BY:  DRUE MARIE SKARYD, ESQ.
                (216-241-8333)
13
        FOR THE DEFENDANTS:
14          VEDDER, PRICE, KAUFMAN & KAMMHOLZ, P.C.
                305 Third Avenue
                New York, New York 10022
15          BY:  JOHN H. EICKEMEYER, ESQ.
                (212-407-7760)
16

17

18

19

20                          Aleen M. Stanton
                            CLSR #00196
21

22      NIZIANKIEWICZ & MILLER REPORTING SERVICES
                972 Tolland Street
23      East Hartford, Connecticut 06108-1533
                1-860-291-9191
24

25

1     . . . Deposition of **The Witness,**
**CAROLYN SHANNAHAN,** taken on behalf of the

2 **Defendant, GRASSI & COMPANY, CPAs, P.C.,** in the
hereinbefore entitled action, pursuant to the

3 Federal Rules of Procedure pursuant, before Aleen
M. Stanton, LSR, duly qualified Notary Public in

4 and for the State of Connecticut, at the **home of**
**Carolyn Shannahan, 27 Chestnut Hill Road, Norwalk,**

5 **Connecticut,** commencing at **approximately 2:30**
**P.M.,** on Wednesday, December 10, 2003.

6

7

8       STIPULATIONS

9

10   It is hereby stipulated and agreed by and
among counsel for the respective parties that all

11 formalities in connection with the taking of this
deposition, including time, place, sufficiency of

12 notice and the authority of the officer before
whom it is being taken may be and are hereby

13 waived.

14   It is further stipulated and agreed that
objections, other than as to form, are reserved to

15 the time of trial and that the reading and signing
of the deposition **is NOT WAIVED.**

16   It is further stipulated and agreed that the
proof of the qualifications of the notary public

17 before whom the deposition is being taken is
hereby waived.

18

19

20

21

22

23

24

25

1  I don't think Global was ever an issue.  It was more
2  with AT&T, but some AT&T would bill up to date to a
3  certain point and on the 6th they might go up to the
4  29th or the 30th of the prior month.  Some were ahead
5  and some were behind.  I can't remember exactly what
6  Invoices, but we would have conversations so that would
7  be consistent on which Invoices on how we were
8  recording those, but it was never an issue.  It was
9  just a discussion.
10      Q    Let me show you again Exhibit 5, which was
11  Global Crossing Invoices.  When you say "billed," what
12  do you mean by billed current and if you need to refer
13  to the Invoice by all means?
14      A    If I remember correctly this would be, and I
15  would have to go back and see, but this was usage up
16  until the 18th of May, but I can't recall.  I believe
17  that would have been for the May expenses, but without
18  going back and looking at what we did prior, I couldn't
19  remember that.
20      Q    Who determined which month's expenses it
21  would be?
22      A    Well, we would be consistent with it.  You
23  know, if an Invoice were in a month of arrears and you
24  go through a month in arrears, then we would just be
25  consistent with that process.

1       Q    And the usage that you would be talking about

2    in terms of which months' expenses would be the

3    $260,000 figure that appears there?

4       A    Correct, I think they used to give two

5    Invoices.

6       Q    I think there were two accounts?

7       A    Yes.

8       Q    I think there was another account?

9       A    Yes, there would have been the 260s which

10   would have been broken down further.

11      Q    But you're not sure which month that would

12   have been allocated to?

13      A    No, not without going back and looking, but I

14   believe it would have been May.  I can't swear by that.

15      Q    Is that something that you worked on or

16   something that you and Mark Thomas did?

17      A    We have done it together.  I went to Mark for

18   a lot of guidance on these Invoices.  He was the

19   contact person with the carriers.  He was the one who

20   understood really what the usage was and whether it was

21   what he had estimated it should be.

22           **MR. EICKEMEYER:**  I don't think I have

23      anything further.  Thank you very much for your

24      time.

25           **THE WITNESS:**  Thank you.